IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

IN RE:                                            )
                                                  )
JAMES V. DONAHUE and                              )   Case No. 13-50281-13
MELBA J. DONAHUE,                                 )
                                                  )
            Debtors.                              )

### ORDER DENYING MOTION TO DISMISS AND SUSTAINING, IN PART, OBJECTION TO AMENDED CHAPTER 13 PLAN

Sheila Palmer, the Platte County, Missouri Collector of Revenue ("Platte County"), filed a Motion to Dismiss the Chapter 13 bankruptcy case filed by Debtors James and Melba Donahue on the ground that they failed to pay their 2012 and 2013 real and personal property taxes, and because they failed to submit their property tax assessment form for the year 2014.  Platte County also objects to the Debtors' amended Chapter 13 Plan on the ground that the Plan proposes to pay the 2013 property taxes as a priority claim through the Plan.  The crux of Platte County's argument is that the 2013 property taxes are a postpetition obligation which the Debtors cannot pay through the Plan unless Platte County chooses to permit the Debtors to do so.  For the reasons that follow, the Court finds that the 2013 property taxes are a prepetition obligation and, therefore, the Debtors may propose a plan paying the tax obligation over time through the plan.

The Debtors filed this Chapter 13 case on April 30, 2013.  At the time they filed, they owed Platte County for past real and personal property taxes for the year 2012 which were due December 31, 2012, prepetition.  In addition, the Debtors owned real and personal property for which they would be liable for property taxes for the year 2013, with such taxes being due for payment on or before December 31, 2013, postpetition.  The Debtors failed to list either of the two tax obligations

on their Schedules, and failed to treat either of them in their Chapter 13 Plan which was confirmed on August 19, 2013. Because Platte County was not listed as a creditor, it did not receive notice of the bankruptcy filing, or of the confirmed Plan, until nearly a year later.

Upon learning of the filing, on August 19, 2014, Platte County filed a Proof of Claim for the 2012 real property taxes in the amount of $1,512.57. Platte County asserts that claim is secured by the real property. It also filed the instant Motion to Dismiss, asserting that the failure to pay the 2013 property taxes which were due on or before December 31, 2013, which Platte County asserts is a postpetition obligation, is cause for dismissal.[1] The Debtors responded to the Motion to Dismiss, and also filed a proposed Amended Plan to pay both the 2012 and 2013 property taxes through the Plan. Specifically, the Debtors propose to pay Platte County as a priority creditor in the amount of $610 (presumably for the personal property taxes for both years) and a secured creditor in the amount of $2,730 (presumably for the real property taxes for both years). Platte County objected to the Amended Plan.

It appears to be undisputed that the 2012 taxes are a prepetition claim and can be paid through the Plan. The issue here is whether the 2013 taxes are also a prepetition obligation which can be paid through the Plan, or whether that tax obligation is a postpetition obligation which must be paid directly by the Debtors, and not over time through the Plan.

---

[1] Platte County also asserted that the Debtors' failure to submit their property tax assessment form for the year 2014, which was due March 1, 2014, was cause for dismissal under §§ 1307(e) and 1308. In its post-hearing Brief, Platte County states that the Debtors have now filed the 2014 assessment form and does not pursue its argument that the case should be dismissed on that basis. It thus appears that issue has been resolved, at least until the 2014 taxes become due December 31, 2014.

2

The Debtors point first to § 1305, which provides, in relevant part, that "[a] proof of claim may be filed by any entity that holds a claim against the debtor . . . for taxes that become payable to a governmental unit while the case is pending," and that a claim so filed shall be allowed or disallowed "the same as if the claim had arisen before the date of the filing of the petition."[2] The parties agree that, while the Debtors would be liable for taxes on any property they owned on January 1, 2013 (before the petition was filed), those taxes did not "become payable" until after the mill rate, and thus the actual tax amount, was determined in the fall of 2013. The tax bills were sent in November, 2013, and the taxes were last payable without penalty on December 31, 2013, both of those dates occurring while the bankruptcy case was pending. Thus, it seems to be undisputed that the 2013 tax obligation "became payable . . . while the case is pending," as that phrase is used in § 1305.

However, Platte County correctly points out that the plain language of § 1305 does not permit *debtors* to file such claims on a creditor's behalf,[3] nor does it *require* the holders of such claims to file one. Rather, as to the holders of such tax claims which become payable while the case is pending, the statute is "permissive" in the sense that the holder may choose not to file such a claim and, thus, not have its claim treated through the Plan.[4] If it chooses not to file such a claim, the tax must be paid directly by the debtor and the debt will survive a bankruptcy discharge.[5] Here, since Platte County has chosen not to file a claim for the 2013

---

[2] 11 U.S.C. § 1305(a) and (b).

[3] *See In re Hight*, 670 F.3d 699, 702 (6th Cir. 2012); 8 Collier on Bankruptcy ¶ 1305.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[4] *See id*; 8 Collier on Bankruptcy ¶ 1305.02.

[5] 8 Collier on Bankruptcy ¶ 1305.02.

3

taxes under § 1305, the Debtors cannot rely on that provision to require the 2013 taxes be paid through the Plan.

That said, if the 2013 taxes are a prepetition priority claim under § 507(b)(8)(B), as opposed to a postpetition administrative claim under § 503(b)(1)(B), then the Debtors need not rely on § 1305 to treat the claim through the Plan.

Section 503(b)(1)(B) provides that there shall be allowed administrative expenses for any tax "incurred by the estate, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in section 507(a)(8) of this title."[6] In order to qualify as a 503(b)(1)(B) administrative claim, the tax must have been "incurred by the *estate*" (*i.e.*, incurred postpetition) and, even if incurred by the estate, they must *not* be a tax of the kind specified in § 507(a)(8).[7]

Section 507(a)(8) gives priority treatment to "allowed unsecured claims of governmental units, only to the extent that such claims are for . . . a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition."[8] And, § 502(i) provides that "[a] claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(8) of this title shall be determined, and shall be [allowed or disallowed] the same as if such claim had arisen before the date of the filing of the petition."[9]

---

[6] 11 U.S.C. § 503(b)(1)(B).

[7] *See In re Anchor Glass Container Corp.*, 375 B.R. 683, 687 (Bankr. M.D. Fla. 2007).

[8] 11 U.S.C. § 507(a)(8)(B).

[9] 11 U.S.C. § 502(i).

>   To qualify for priority under section 507(a)(8)(B), the tax must meet three criteria. First it must be a "property tax." Second, it must have been incurred prior to the commencement of the case. Third, the tax must have been last payable without penalty after one year prior to the commencement of the case.[10]

There is no dispute that the taxes at issue here are "property taxes." Further, since the taxes were "last payable without penalty" on December 31, 2013, they were "last payable without penalty after one year before the date of the filing of the petition."[11]

Thus, the only disputed issue under § 507(a)(8)(B) is when the 2013 taxes were "incurred." If they were "incurred" prior to filing, they are a priority claim which must be treated through the Plan; if they were "incurred" after filing, they are a postpetition administrative claim under § 503(b)(1)(B) which must be paid promptly and directly by the Debtors outside of the Plan, since Platte County is not voluntarily choosing to file the claim under § 1305, discussed above.

"The Bankruptcy Code does not define when a property tax obligation is 'incurred.'"[12] As a result, courts have employed different methods to determine whether a tax is incurred pre- or postpetition.[13] "Some courts use a proration method based on the number of days prior to the petition date. Other courts determine when a tax is incurred based on the date economic liability arises under state law. Still other courts determine priority based on the date of assessment

---

[10] 4 Collier on Bankruptcy ¶ 507.11[3].

[11] *See* 4 Collier on Bankruptcy ¶ 507.11[3][c] ("There is no requirement, however, that the last date on which the tax could be paid without penalty have occurred prior to commencement of the case.").

[12] *In re Columbia Gas Transmission Corp*, 37 F.3d 982, 984 (3d Cir. 1994).

[13] 4 Collier on Bankruptcy ¶ 507.11[3].

5

under state law."[14]  I agree that the determination of when a state tax is "incurred" is governed by state law.[15]

Under § 137.075 of the Missouri Statutes, "[e]very person owning or holding real property or tangible personal property on the first day of January, including all such property purchased on that day, shall be liable for taxes thereon during the same calendar year."[16]  And, "[r]eal estate and tangible personal property shall be assessed annually at the assessment which commences on the first day of January."[17]

The Debtors have referred to January 1 as the "assessment" date for purposes of the Platte County property taxes.  Platte County's attorney indicated at the hearing that the taxes cannot be "assessed" until after the mill levy is determined in the fall.  As Collier's points out, however, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress changed the word "assessed" in § 507(b)(8)(B) to "incurred," in part to make clear that "priority [is] to be based on the date that the debtor became obligated with respect to the tax rather than [an] assessment date that might not bear any relation to the date on which the debtor became liable for payment."[18]  The critical date, then, is when the Debtors *became liable for payment* of the 2013 taxes under Missouri law.

---

[14] *Id.* (footnotes omitted).

[15] *In re Columbia Gas Transm.*, 37 F.3d at 984; *Marion County Treasurer v. Blue Lustre Products, Inc.*, 214 B.R. 188, 189 (S.D. Ind. 1997) (citing See *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)).  Similarly, in *In re Payless Cashways, Inc.*, 254 B.R. 746 (Bankr. W.D. Mo. 2000), cited by the Debtors, I looked to Indiana state law to determine whether an Indiana property tax was a pre-or postpetition obligation.

[16] Mo. Rev. Stat. § 137.075.

[17] Mo. Rev. Stat. § 137.080.

[18] 4 Collier on Bankruptcy ¶ 507.11[3][b].  *See also In re Anchor Glass Container Corp.*, 375 B.R. 683, 688 (Bankr. M.D. Fla. 2007) (holding that the substitution of "incurred" for "assessed" in § 507(a)(8)(B) is in line with the earlier cases holding that priority under that

Under § 137.075, regardless of the fact that the amount of the tax is not known, and thus the tax bill cannot as a practical matter be paid, before the fall of a given year, the owner of real or personal property on January 1 becomes "liable" for the taxes due for that year, whatever they may turn out to be. It is, in effect, a contingent and unliquidated claim incurred on January 1:

> A tax "claim" for bankruptcy purposes includes any right to payment of a tax obligation whether fixed, contingent, or unliquidated. 11 U.S.C. § 101(5). It may be contingent, for example, because the due date for the tax payment had not passed as of the petition date. It may be unliquidated because the taxing authority has not yet set tax rates or because the value of the property had not been finally determined. Thus, while a taxing authority holds a liquidated claim on the due date for the taxes that might be payable post-petition, an unliquidated contingent claim may nevertheless have arisen at a pre-petition point in time substantially earlier than the date on which the tax liability finally becomes liquidated and noncontingent.[19]

As stated, under Missouri law, the Debtors became contingently liable for the 2013 taxes on January 1, 2013. The claim for the 2013 taxes was thus incurred for these purposes on that date. It is, therefore, a priority prepetition claim under § 507(a)(8), and not an administrative claim under § 503(b)(1)(B).[20]

Section 1322(a)(2) provides that a plan "shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of

---

section should be based on the date the debtor became obligated with respect to the tax, rather than other state law definitions of assessed that may not bear any relation to the date on which the debtor becomes liable for payment.).

[19] *In re Anchor Glass*, 375 B.R. at 687 (citations and footnote omitted).

[20] *Accord In re Anchor Glass*, 375 B.R. at 689 ("Therefore, even though the due date for payment of the taxes does not occur until months later, a 'right to payment,' that is, a claim under section 105(5) against the Debtor, accrued on January 1st. In addition, the ad valorem tax liens associated with the tax claim constituted a first priority lien on the subject property that vested as of January 1st. Therefore, the Debtor's liability for the Tax Claim was 'incurred' on January 1, 2005.").

Document Page 8 of 9

this title, unless the holder of a particular claim agrees to a different treatment of such claim."[21] As a result, the Debtors are not prohibited from proposing a Plan which provides for the payment of the 2013 taxes as a priority claim through the Plan.

In order to propose such a Plan, however, there must be a claim filed for the 2013 taxes. As discussed above, § 1305 does not require Platte County to file such a claim, nor does it permit the Debtors to do so. However, because this is a prepetition claim under §§ 507(b)(2)(B) and 502(i), as opposed to a postpetition claim, "there is nothing in § 1305 that provides a basis to disallow a proof of claim filed by a debtor on behalf of a creditor under § 501(c) of the Bankruptcy Code."[22] As a result, in the event that Platte County does not file a claim for the 2013 taxes within 14 days or such extension as is granted by court order, the Debtors will be permitted to do so under § 501(c).

As a final note, as Platte County points out in its Brief, because the original Plan did not provide for treatment of the 2013 taxes, the Debtors had an obligation to pay them when they came due, as stated in the *Handbook for Chapter 13 Debtors* referenced in Platte County's Brief. While I am holding that the Debtors are not prohibited from proposing an amended Plan paying the 2013 taxes at this point, the better practice most certainly would have been to either address the 2013 taxes in the original Plan or to timely pay them outside of the Plan when they came due. Moreover, any amended Plan the Debtors propose will be subject to all the other requirements of § 1329. And, because the Plan is a Liquidation Analysis Pot plan and the distribution to other creditors may thus be affected by the payment of

---

[21] 11 U.S.C. § 1322(a)(2).

[22] *In re Hight*, 670 F.3d 699, 702 (6th Cir. 2012) (citation omitted). Section 501(c) provides that, "[i]f a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim."

this claim, Platte County is correct that an amended Plan must be noticed to all creditors and interested parties. Finally, although the Debtors have now filed the assessment form for the 2014 taxes, they are admonished to timely file such forms in the future and to timely pay the corresponding taxes, including those due on or before December 31, 2014.

ACCORDINGLY, the Platte County Collector of Revenue's Motion to Dismiss is DENIED. Its Objection to Confirmation of the Debtors' Amended Plan is OVERRULED on the issue of payment of the 2013 property taxes, and SUSTAINED on the issue of notice to creditors. In the event that the Platte County Collector of Revenue does not file a claim for the 2013 taxes within 14 days or such extension as is granted by court order, the Debtors will be permitted to file one on its behalf.

IT IS SO ORDERED.

Dated: 10/27/14                                         /s/ Arthur B. Federman
                                                        Chief Bankruptcy Judge